### In re W. J. FLOYD & CO.

(District Court, E. D. North Carolina.   September 6, 1907.)

1. BANKRUPTCY—PARTNERSHIP—MORTGAGE TO SECURE DEBT OF PARTNER.
   A mortgage executed by an insolvent partnership on its property, within four months prior to its bankruptcy, to secure the individual debt of a partner, is voidable as against partnership creditors.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 282.]

2. SAME—PROVABLE DEBTS—CLAIM OF PARTNER.
   The amount contributed by a partner to the capital of a partnership cannot on the bankruptcy of the firm be proved as a debt entitled to share ratably with general creditors.

In Bankruptcy.   On review of decision of referee.
For former opinion, see 154 Fed. 757.

J. C. Meekins and A. D. MacLean, for creditors.
Junius D. Grimes, for bankrupt Wayner D. Floyd.

PURNELL, District Judge.   The present appeal, the third in this case, from a ruling of the referee, disallowing the alleged claim of B. F. Floyd, the brother, as a preference, and subjecting the same to the rights of the general creditors, and refusing to allow the alleged claim of Wayner D. Floyd, the son, to share pro rata with the creditors, although the referee allowed both claims to be filed, but properly held that they were secondary or subject to the claims of the creditors in the distribution of assets.   W. J. Floyd claims to have executed a mortgage to his brother, B. F. Floyd, on the stock of goods for $2,500 to purchase the interest of W. D. Floyd, the father.   This mortgage was not filed until a few days before the assignment and within four months of the institution of this proceeding, so that the same is void as a preference.   That this was the individual debt of W. J. Floyd was admitted by W. J. Floyd himself upon his examination before the referee.   The ruling of the referee is therefore entirely correct and is supported by authority.

It is now attempted to prove the $2,500 alleged to have been contributed by Wayner D. Floyd to the firm as a partnership debt, so that the same may share pro rata with the creditors in the assets which

have been realized. This claim, as filed, contains in itself the reason which prompted and justified the referee in refusing to allow it to share equally with the creditors in the distribution of assets. In the first place, it recites with considerable formality the formation of a copartnership by W. D. Floyd, father, W. J. Floyd, son, and Wayner D. Floyd, grandson, and the contribution of $2,500 to the capital thereof by Wayner D. Floyd; and further recites that W. J. Floyd later purchased the interest of W. D. Floyd, his father, for $2,500. It is a new and novel proposition that the amount contributed by one partner to the business as capital upon the formation of the copartnership should be provable as a debt, entitled to share with the general creditors upon its dissolution, especially when the contributing member is a minor, without the capacity to contract. This proposition is seriously contended for in order, it seems, to carry out the promise originally made to the creditors when the assignment was made that bankruptcy would yield them practically nothing in the way of dividends, and the apparent purpose is to carry out this promise by diminution of the assets, if possible, so as to deter other creditors who might have the temerity to resist the ex parte terms of a voluntary assignment. The only justification for such a contention is the ruling of the referee refusing the allotment of exemptions to Wayner D. Floyd, affirmed by this court, and the statement therein by the referee: "And he is permitted, through his next friend or guardian, to file his claim as a general creditor." But this last sentence was never considered by this court. This much of the ruling is obiter, as it did not arise upon the question then presented of the right of Wayner D. Floyd to his exemptions out of the stock, which was refused upon the ground that his separate and individual estate had not been taken over nor administered in this bankruptcy, nor had he been held personally liable for the debts—a liberal ruling for him—and upon the further ground that his relation to the firm as a partner had never before been disclosed to the creditors, or any one else, either in the assignment or otherwise.

But notwithstanding the ruling that Wayner D. Floyd's separate and individual estate could not be touched by the creditors nor administered in this proceeding, and that he was not personally liable for the debts, being a minor, he and his attorney took the position and alleged in this court that he was a partner, although that fact had never before been disclosed, and claimed that he had contributed $2,500 to the capital of the firm, not as a creditor, but as a partner, and they not only took that position in argument, but swore to it in the examination and even in the claim now filed, so that they are estopped to deny their own contention, whether it be right or wrong. In other words, having taken a position and sworn to it, they will not be permitted to deny their own oath nor repudiate their solemn assertion in this court. They might have said before the referee, in the first instance, on their former appeal, "if you will not permit Wayner D. Floyd, as an undisclosed partner, to take half of the stock or claim exemptions out of it, then permit him to file his claim as a creditor"; but because of its inconsistency, or some other motive, they did or would not adopt this attitude, and, having taken the position of partner or nothing, they

must stand or fall by it. This doctrine of estoppel is the law of the case.

But while this is the law of the case, the right and equity of it is that B. F. Floyd and Wayner D. Floyd cannot now be permitted to come in and file claims aggregating $5,000, thereby reducing the dividend of the creditors to a mere bagatelle and making good their assurance that the terms of the assignment should have been accepted, and even in this assignment no claim was scheduled for Wayner D. Floyd, although his attorney prepared the assignment and was named as assignee.

If Wayner D. Floyd, or any one for him, ever contributed $2,500 to this business, then his father, and not the creditors, squandered it, who, according to the testimony, boasted of having saved up $8,000 just before the assignment. Perhaps another reason for their objection to bankruptcy and to the jurisdiction of this court was that it offered an opportunity for looking into the transaction, which seems to have been suspicious of fraud, and their efforts to consume the assets left to the creditors will not be tolerated in a court of bankruptcy, governed, as it is, by the rules in equity.

It is therefore considered and adjudged that the decision of the referee disallowing the claims of W. D. Floyd, the father, and Wayner D. Floyd, the son of W. J. Floyd, be, and the same is hereby, affirmed.